IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION



FILED

OCT 18 2013

CLERK, US DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA,

v.  CRIMINAL NO. 4:13cr75

GREGORY LAWRENCE TROPEA,

Defendant.

## OPINION AND ORDER

This matter comes to the Court upon Gregory Lawrence Tropea's ("Defendant") Motion to Suppress. For the reasons set forth herein, Defendant's Motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On May 8, 2013, the Newport News Police received a missing person report for Defendant, who at the time was living in the Host Inn in Newport News. The call to the police to report Defendant as missing was made by his good friend Robert Delimon ("Delimon"), who had not seen or heard from Defendant since May 3, 2013. Delimon was worried that Defendant might have been hit by a car while riding his bicycle, and had already checked with three local hospitals looking for Defendant. Two Newport News Police Officers were dispatched to meet Delimon at the hotel, and arrived there promptly. On the way they learned from a routine background check that Defendant was on active federal probation for a prior offense and was registered as a sex offender in Virginia.

The officers spoke with the hotel manager, Henry Patel ("Patel"), who told them Defendant had been staying at the hotel continuously since December 24, 2012. Defendant had always paid his bills, each for one week's rent, ahead of time, either in cash or by credit card. Defendant had never paid his bill late during this period, and he had no understanding with hotel

1

management that he would be allowed to do so without being evicted. However, the last bill Defendant had paid was only good through May 5, 2013—his lease had been expired for three days—and he had not been seen at the hotel since that day. Patel also testified that the hotel had a policy of not allowing late payments in general, and that he was planning to remove Defendant's belongings from the room and evict Defendant the day the officers arrived, May 8, 2013.

Patel let the officers into Defendant's hotel room to look for him or information about his whereabouts. In the room, the officers saw a laptop computer. Still trying to find information about Defendant's whereabouts, the officers contacted a federal probation officer and learned that as a condition of Defendant's probation he was prohibited from possessing a laptop. Realizing that Defendant was likely in violation of his supervised release conditions, the officers left the hotel room and alerted the FBI of potential violations of federal law. FBI and Task Force Agents applied for a federal search warrant, and it was granted the next day, May 9, 2013. FBI agents executed the search warrant and seized the laptop computer and a large number of USB drives stashed in coffee creamer containers throughout the room. A Computer Forensic Examiner found them to contain thousands of images of child pornography.

Defendant was eventually located at the Virginia Peninsula Regional Jail ("VPRJ"), where he had been incarcerated since May 5, 2013. (The Newport News police officers had no knowledge of Defendant's incarceration before they entered his room on May 8, 2013, because that fact did not appear on their background check.) On May 10, 2013, federal law enforcement agents interviewed Defendant in VPRJ. He waived his Miranda rights and made a number of incriminating statements regarding the laptop seized from his hotel room.

Defendant was charged on September 9, 2013, in a 26-count Superseding Criminal Indictment, ECF No. 20, of twelve counts of Receipt of Child Pornography in violation of 18

U.S.C. § 2252A(a)(2) and fourteen counts of Making Materially False Statements to an Agent of the United States in violation of 18 U.S.C. § 1001.

## II. DEFENDANT'S MOTION TO SUPPRESS

The instant motion seeks to suppress all evidence seized in relation to the offenses charged and any statements made to law enforcement pursuant to his arrest. The Government opposes the motion, arguing that (1) Defendant lacks standing to challenge the searches and seizures; and even if he does have standing, (2) the community caretaking exception to the warrant requirement applies; and (3) the exigent circumstances exception applies. For the reasons set forth below, the Court **FINDS** that Defendant lacks standing to challenge the search of his room because he had not paid his rent. Thus it is unnecessary to determine whether any exception to the warrant requirement would have applied if Defendant did have standing.

### A. STANDARD OF REVIEW

In order to have standing to challenge a search under the Fourth Amendment, a person must have a reasonable expectation of privacy in the place searched. Rakas v. Illinois, 439 U.S. 128, 143 (1978). An expectation of privacy is reasonable when, first, a person has "exhibited an actual (subjective) expectation of privacy" and, second, that expectation is "one that society is prepared to recognize as 'reasonable.'" Katz v. United States, 389 U.S. 347, 361, (1967) (Harlan, J., concurring). A person renting a hotel room has a reasonable expectation of privacy in that room, Stoner v. California, 376 U.S. 483, 490 (1964), but that reasonable expectation usually terminates after the rental period ends, United States v. Kitchens, 114 F.3d 29, 31 (4th Cir. 1997) ("Generally, a guest does not have a reasonable expectation of privacy in his hotel room after his rental period has terminated.").

However, if a hotel has a "pattern or practice" of permitting late rent payments, an individual can still have a reasonable expectation of privacy in their hotel room even if they have

3

overstayed their rental period. Id. at 32 ("A guest may still have a legitimate expectation of privacy even after his rental period has terminated, if there is a pattern or practice which would make that expectation reasonable."). In determining whether a hotel has a "pattern or practice" of accepting late rent payments, one must look to the history between the hotel and the individual whose room was searched. See id. (noting that in cases where standing remained even after a payment was missed, "the courts determined that an individual maintained a legitimate expectation of privacy even after his lease term had expired since the hotel had previously allowed the individuals to stay after check-out time without consequence" (emphasis added)).

A reasonable expectation of privacy in a hotel room continues after the end of a rental period for as long as a hotel has been willing to accept late payments in the past. See United States v. Watson, 783 F.Supp. 258, 263 (E.D.V.A. 1992). A hotel's past "pattern or practice" of accepting an individual's late payments creates an expectation of privacy in the room that is both subjectively and objectively reasonable, thus satisfying Katz's two-prong test. Kitchens, 114 F.3d at 32 ("[I]n such cases, individuals have a subjective belief that due to past practice they will be allowed to stay in their rooms past check-out time and pay for another night at a later time. In addition, the pattern or practice of allowing guests to stay past check-out time without consequence also gives rise to an objectively reasonable expectation of privacy."). This pattern or practice of accepting late payments has been found to extend a tenant's reasonable expectation of privacy by over 10 hours past check-out time in cases where such late payments had been previously permitted. Watson, 783 F.Supp. at 263.

On the other hand, where an individual has no history of being allowed to pay late and keep their room, the reasonable expectation of privacy in the room terminates at the same time as the rental period. In Kitchens itself, for example, the hotel manager testified that guests were

always asked at the time of checkout either to leave or to re-register and that occupants who stayed past checkout were evicted, often with the help of the police. Id. at 30. The defendants in that case were still in their rooms one hour after checkout time, and given the hotel's history of consistently evicting tenants who overstayed their lease and the fact that the defendants had no prior history of making late payments, they had no reasonable expectation of privacy and lacked standing to challenge the search of their room. Id.

When unlawfully obtained information is used to seize evidence against a defendant, that evidence must be suppressed as "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 488 (1963). Thus, if an unconstitutional search or seizure later leads law enforcement to tangible evidence of a crime, it may not be admitted against the defendant whose rights were violated. Id. at 484–85. Of course, evidence obtained based on lawfully gathered information may be admitted against a defendant at trial.

### B. DISCUSSION

In the instant case, the evidence establishes that Defendant did not have a reasonable expectation of privacy in his hotel room. Thus, he lacks standing to challenge the search of his hotel room and his motion to suppress must be **DENIED**.

Defendant began staying at the Host Inn on December 24, 2012. The uncontradicted evidence proved that he paid for his hotel room one week at a time every week from that date to the beginning of May, 2013. Defendant always paid on time, and there was no understanding with hotel management that he could make late payments. In fact, the hotel had a policy of not allowing late payments. These facts conclusively establish that there was no "pattern or practice" of allowing any hotel guests, let alone Defendant, to make late payments. For this reason, the Court **FINDS** that Defendant had no reasonable expectation of privacy in his hotel room, and therefore has no standing to challenge the initial search of his hotel room.

Defendant argues that because the hotel took no steps to evict him until May 8, 2013—three days after his rental period ended—he did in fact still have a reasonable expectation of privacy in the room. This argument fails because, since there was no pattern or practice to the contrary, any expectation was neither subjectively nor objectively reasonable. Binding case law makes clear that "absent a pattern or practice to the contrary, a person's legitimate expectation of privacy in a motel room terminates at check-out time." Kitchens, 114 F.3d at 32. Defendant's reasonable expectation of privacy ended the same day that his rental period did: May 5, 2013.

Because the initial search of Defendant's hotel room was constitutional, the fruit of that search is admissible. The laptop and USB drives were seized from the room pursuant to a valid search warrant supported by what law enforcement agents saw when they lawfully entered Defendant's room. Likewise, Defendant's statements when confronted with that evidence were made after he validly waived his Miranda rights. The tree in the instant case was not poisonous; its fruit is admissible.

Since Defendant does not have standing to challenge the search of his hotel room, there is no reason to discuss whether the community caretaking exception or the exigent circumstances exception applied as to the officers' entering the room.

### III. CONCLUSION

For the reasons set forth herein the Court **DENIES** Defendant's Motion to Suppress. Defendant has no standing to challenge the search.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all Counsel of Record.

IT IS SO ORDERED.

/s/
Robert G. Doumar
Senior United States District Judge

_____
UNITED STATES DISTRICT JUDGE

Norfolk, VA
October 18, 2013